# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN CORSALE and DAVID TAYLOR, )
*individually and on behalf of all other* )
*similarly situated,* )
                                  )        Civil Action No. 18-996
                                  )
                  Plaintiffs,     )        Judge Marilyn J. Horan
                                  )
        v.                           )
                                  )
SPERIAN ENERGY CORPORATION, )
                                  )
                  Defendant.       )

## OPINION AND ORDER

Plaintiffs John Corsale and David Taylor, individually and on behalf of all others similarly situated, bring a putative class action against Defendant Sperian Energy Corporation under Pennsylvania common law and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* (ECF No. 31). The Complaint was first filed by Plaintiff Corsale on May 24, 2018 in the Eastern District of Pennsylvania. (ECF No. 1). Defendant Sperian Energy moved to transfer venue to the Western District of Pennsylvania, (ECF No. 13), which the court granted on July 19, 2018, (ECF No. 15).

On August 21, 2018, Plaintiff Corsale, now joined by Plaintiff Taylor, filed an Amended Complaint with leave of court. (ECF No. 31). On September 25, 2018, Defendant Sperian Energy filed a Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 36). The parties subsequently filed briefs and notice of supplemental authority for the Court's consideration. (ECF Nos. 37, 46, 49, 52, 53, 54, 56, 60). In addition to its brief in support of the Motion to Dismiss, Defendant Sperian Energy submitted additional evidence for the Court's consideration. (ECF Nos. 36-2 *through* 36-10). On March 15, 2019, the Court

1

notified the parties that, in accordance with Fed. R. Civ. P. 12(d), the Court would be treating the Motion to Dismiss, at least in part, as a Motion for Summary Judgment. (ECF No. 55; *see also* ECF No. 59). As explained again by the Court at the April 2, 2019 oral argument, the only matter that would be considered in the nature of summary judgment would be the materials that Defendant Sperian Energy attached to its Motion to Dismiss. Plaintiffs were given notice of the Court's potential consideration of these materials in order to afford Plaintiffs the opportunity to respond and argue. After careful consideration, however, the Court finds it does not need the extra-pleading materials to decide this Motion, as these materials ultimately do not alter the Court's analysis of the present issues.

For the follow reasons, Defendant Sperian Energy's Motion to Dismiss will be granted.

## I. Factual Background

The wholesale electricity market is regulated by the Federal Energy Regulatory Commission and, in Pennsylvania, is administered by the PJM Interconnection. (ECF No. 31, at ¶ 69). Utility companies purchase electricity in the wholesale electricity market and then resell the electricity to their customers. *Id.* Historically, energy markets were heavily regulated, and "[t]he rates that utilities could charge were strictly controlled." *Id.* at ¶ 2. However, in the 1990s, state energy markets, including Pennsylvania's, were deregulated in the hope that competition between energy providers would help lower energy costs for consumers. *Id.* at ¶¶ 2, 23. Deregulation resulted in the emergence and growth of electric generation suppliers. *Id.* at ¶ 2.

An electric generation supplier, or EGS, is an entity that, like a utility, buys electricity at the wholesale rate from companies that produce energy, and then sells that electricity to consumers with a markup. *Id.* at ¶ 25. Through deregulation, EGSs are supposed to able to

2

accomplish a reduction in consumers' costs by using "innovative purchasing strategies," such as "owning electricity production facilities; purchasing electricity from wholesale marketers and brokers at the price available at or near the time it is used by the retail consumer; and purchasing electricity in advance by purchasing for the delivery of electricity in the future at a predetermined price." *Id.* EGSs do not produce or deliver the electricity to consumers; rather, the electricity production companies continue to deliver the electricity to consumers' utility companies, which in turn deliver the electricity to the consumers. *Id.* In other words, EGSs "supply" electricity by "play[ing] a middleman role" and acting as "brokers and traders" of electricity. *Id.* at ¶¶ 25, 27. Consequently, "[t]he customer's existing utility continues to bill the customer for both the energy supply and delivery costs," and "[t]he only difference to the customer is which company sets the price for the customer's energy supply." *Id.* at ¶ 27.

Defendant Sperian Energy Corporation is an EGS that has its principal place of business in Houston, Texas and operates in the Pennsylvania market. *Id.* at ¶¶ 20, 22. In or around June 2015, Defendant Sperian Energy solicited Plaintiff John Corsale, a citizen of Pennsylvania, by mail, promising that Defendant Sperian Energy "would provide him a competitive rate if he switched" from his utility company, Med-Ed, to Defendant Sperian Energy. *Id.* at ¶¶ 18, 40. Upon receiving the solicitation letter, Plaintiff Corsale called Defendant Sperian Energy to learn more, and Defendant Sperian Energy allegedly "reaffirmed its promises of a competitive rate if Plaintiff switched to its electricity plan." *Id.* at ¶ 40. During the phone call, Plaintiff Corsale switched from his existing utility to Defendant Sperian Energy. *Id.* at ¶ 41. Plaintiff Corsale thereafter received a welcome letter, dated June 30, 2015, along with a document detailing the "Terms and Conditions" of the agreement. (ECF No. 31-1, at 2; ECF No. 31, at ¶ 49). This initial writing stated that the parties agreed Plaintiff Corsale was bound for a three-month term, during which time he would pay a fixed rate for electricity. (ECF No. 31-1, at 2). The letter also

stated that Defendant Sperian Energy would charge a monthly Energy Service Fee of $4.93, and

explained that if Plaintiff Corsale wished to terminate his agreement with Defendant Sperian

Energy during the initial three-month term, he would be subject to a $49 early termination fee.

*Id.* at 2–3. Additionally, the Terms and Conditions explained that if Plaintiff Corsale chose to

continue with Defendant Sperian Energy beyond the initial three-month term, the agreement

would roll over to a month-to-month variable rate. (ECF No. 31, at ¶¶ 43, 47). The Terms and

Conditions stated

> This agreement does not renew automatically. At the end of the initial term, if you
> do not choose a new product, your term products will rollover into a month-to-
> month variable product. . . . You will receive two written notices from us either as
> a bill message or in a separate email or direct mail that precedes either the expiration
> date of your Agreement or the effective date of any proposed changes in Terms.
> We will explain your options to you in these two advanced notifications.

> If you have a variable product agreement with us, Sperian Energy may amend the
> terms of this Agreement at any time, consistent with any applicable law, rule or
> regulation, by providing notice to Customer of such amendment at least thirty (30)
> days prior to the effective date thereof. Sperian Energy will supply Customer with
> a current version of this document annually and upon request.

(ECF No. 31-1, at 3–4). As to the variable rate price structure, the Terms and Conditions

provided

> The price for our Month to Month variable product will be calculated monthly and
> may change each month in response to market fluctuations based on several
> conditions including the wholesale electricity prices in PJM. Sperian Energy's
> price may be higher or lower than the [Electric Distribution Company's (EDC's)]
> rate in any given month. There is no cap to this variable rate and the rate you pay
> will be listed on the billing invoice you receive monthly from your EDC. The
> variable product includes the price for electric generation, transmission, related
> services and will include the Pennsylvania Gross Receipts Tax. It does not include
> distribution charges, any applicable state or local sales taxes (if any) or (if
> applicable) Sperian's Monthly Energy Service Fee of $4.93.

*Id.* at 4. The Terms and Conditions also provided that "No savings are guaranteed." *Id.*

The Terms and Conditions further stated that the parties agreed that the Uniform

Commercial Code (UCC) applied to the parties' agreement, and that electricity was a "good" for

purposes of the UCC. *Id.* at 5. The Terms and Conditions included an integration clause. *Id.* at 6. Lastly, the Terms and Conditions provided a right to rescind the agreement within three days of Plaintiff Corsale's receipt of the welcome letter and Terms and Conditions. *Id.* at 4.

In a letter dated August 18, 2015, Defendant Sperian Energy notified Plaintiff Corsale[1] that the end of his initial three-month term was approaching, on or about October 3, 2015. (ECF No. 36-2, at 2; ECF No. 31, at ¶ 50). The letter stated, "We would like to continue to provide you with low cost energy and most important, keep you as a happy Sperian Energy Customer." (ECF No. 36-2, at 2). The letter also served as a notification to Plaintiff Corsale that Defendant Sperian Energy had updated its Terms and Conditions. (ECF No 31, at ¶ 50; ECF No. 36-2, at 2). Plaintiffs allege that the Updated Terms and Conditions gave Defendant Sperian Energy "greater 'discretion' to set its variable rates" than the Initial Terms and Conditions did. (ECF No. 31, at ¶ 50). The language at issue in the Updated Terms and Conditions stated, "If you select a variable product, the price will be calculated monthly and may change each month in response to market fluctuations and conditions at the discretion of Sperian Energy." (ECF No. 36-2, at 3). The remaining language regarding pricing stayed almost entirely the same, namely that

> Sperian Energy's price may be higher or lower than the EDC's rate in any given month. The price includes the price for electric generation, transmission, and related services and includes reimbursement for the state gross receipts tax. It does not include distribution charges, state and local sales taxes, if applicable, or non-recurring charges such as (for illustration purposes only) collection fees.

*Id.* Other relevant terms, such as applicability of the UCC and the integration clause, also remained the same. *Id.* at 4–5.

---

[1] Plaintiffs allege that Plaintiff Corsale did not receive his Updated Terms and Conditions, (ECF No. 31, at ¶ 53), but nonetheless rely on the existence of the Updated Terms and Conditions to support their allegations, *see id.* at ¶¶ 50–57.

Then, in or around November 2015, Defendant Sperian Energy solicited Plaintiff David Taylor, also a citizen of Pennsylvania, by telephone, allegedly promising "that Sperian would provide him with a competitive rate if he switched." (ECF No. 31, at ¶¶ 19, 44). During this phone call, Plaintiff Taylor switched to Defendant Sperian Energy for electricity. *Id.* at ¶ 45. Defendant Sperian Energy sent Plaintiff Taylor a welcome letter, dated November 5, 2015, and a document detailing the "Terms and Conditions" of the parties' agreement, which were virtually identical to Plaintiff Corsale's welcome letter and Initial Terms and Conditions. (ECF No. 31-2; ECF No. 31, at ¶ 49). And, like Plaintiff Corsale, prior to the end of Plaintiff Taylor's initial three-month term, Plaintiff Taylor received an identical letter from Defendant Sperian Energy, dated December 29, 2015, informing Plaintiff Taylor that his three-month term would end on or about February 13, 2016, and that the Terms and Conditions had been updated. (ECF No. 36-3, at 2). The Updated Terms and Conditions received by Plaintiff Taylor in December 2015 were identical to the Updated Terms and Conditions that were sent to Plaintiff Corsale in August 2015. (ECF No. 31, at ¶ 50; ECF No. 36-3, at 3–5).

Neither Plaintiff Corsale nor Plaintiff Taylor cancelled his contract with Defendant Sperian Energy at the conclusion of the initial three-month term, and their contracts rolled over into a month-to-month variable rate plan. (ECF No. 31, at ¶¶ 64, 66). Plaintiffs' monthly bills included a comparison of the rate charged that month by Defendant Sperian Energy and the rate charged by Plaintiffs' utility company. *Id.* at ¶ 65 n.10; ¶ 67 n.12. During the time that Plaintiff Corsale was under a month-to-month variable rate plan, Defendant Sperian Energy charged Plaintiff Corsale at a rate that ranged from 13% to 102% greater than the rate Plaintiff Corsale would have paid had he stayed with his prior utility company, Met-Ed. *Id.* at ¶ 65. Similarly, Defendant Sperian Energy charged Plaintiff Taylor at a rate that ranged from 6% to 135% greater

than the rate Plaintiff Taylor would have paid his prior utility company, West Penn Power. *Id.* at ¶ 67.

Plaintiffs contend that utilities like Met-Ed and West Penn Power "purchase electricity for their customers via a competitive procurement process from the same wholesale electricity market" as other Pennsylvania electricity retailers, so their rates accurately reflect "rates that are based on wholesale electricity prices and market conditions." *Id.* at ¶ 68. Additionally, Plaintiffs allege that because Defendant Sperian Energy "can purchase electricity from any number of markets using any number of purchasing and hedging strategies, . . . its cost for purchasing electricity should at the very least reflect (if not undercut) utilities prices." *Id.* at ¶ 26. In support of these allegations, Plaintiffs provide four comparison charts in the Amended Complaint, comparing the rate Defendant Sperian Energy charged Plaintiff Corsale to Plaintiff Corsale's former utility, *id.* at ¶ 65, and to wholesale market rates, *id.* at ¶ 73; and comparing the rate Defendant Sperian Energy charged Plaintiff Taylor to Plaintiff Taylor's former utility, *id.* at ¶ 67, and to wholesale market rates, *id.* at ¶ 74.

Plaintiffs Corsale and Taylor allege that they, and others like them, "incurred excessive charges for electricity" because of Defendant Sperian Energy's "deceptive conduct, improper pricing practices and price gouging." *Id.* at ¶¶ 18–19. Plaintiff Corsale cancelled his contract with Defendant Sperian Energy in April 2018, two and a half years, or approximately thirty billing periods, after the contract rolled over to a variable rate plan. *Id.* at ¶ 18. Plaintiff Taylor likewise canceled his contract with Defendant Sperian Energy in July 2018, two years and five months, or approximately twenty-nine billing periods, after his contract rolled over to a variable rate plan. *Id.* at ¶ 19.

Based on the foregoing, Plaintiffs bring three claims under Pennsylvania law, individually and on behalf of others similarly situated, in order to "redress Defendant's deceptive pricing

practices that have caused thousands of Pennsylvania consumers to pay more for their electricity than they should otherwise have paid." *Id.* at ¶ 1. In Count I, Plaintiffs assert a claim for breach of contract, and in the alternative, in Count III, they assert a claim for unjust enrichment. *Id.* at ¶¶ 97–104, 114–18. In Count II, Plaintiffs allege a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 *et seq. Id.* at ¶¶ 105–13. Defendant Sperian Energy moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 36).

## II. Legal Standards

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted). The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the four corners of the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). However, if matters outside the complaint and the relied-upon evidence "are presented to and not excluded by

the court," Rule 12(d) requires that the Rule 12(b)(6) motion to dismiss be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *see also Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting 5C Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1366 (3d ed.)) ("'The element that triggers the conversion [from a Rule 12(b)(6) dismissal motion into a Rule 56 motion for summary judgment] is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material.'"). When such outside matters are considered, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Thus, the court must give the parties "'notice of its intention to convert the motion and allow[] an opportunity to submit materials admissible in a summary judgment proceeding or allow[] a hearing.'" *Bruni*, 824 F.3d at 361 (quoting *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989)).

## III. Discussion

A. Breach of contract claim

Defendant Sperian Energy first moves to dismiss Count I, in which Plaintiffs bring a claim for breach of contract, for failure to state a claim. In order to sufficiently plead a claim for breach of contract under Pennsylvania law, a plaintiff must allege facts showing "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 625 (W.D. Pa. 2013). In Count I, Plaintiffs Corsale and Taylor allege that they and the putative class entered into valid contracts—the Initial Terms and Conditions—with Defendant Sperian Energy. (ECF No. 31, at ¶ 98). Plaintiffs allege that Defendant Sperian Energy beached the Initial Terms and Conditions "by charging exorbitant energy rates that are not based on 'wholesale market conditions,'" and that Plaintiffs incurred damages because they paid the exorbitant rates. *Id.* at

9

¶¶ 101, 103. Plaintiffs contend that the Updated Terms and Conditions do not apply because they constitute contract modifications that are unenforceable due to a lack of consideration. *Id.* at ¶ 13.

Defendant Sperian Energy puts forward several arguments as to why Plaintiffs' breach of contract claim should be dismissed. First, Defendant Sperian Energy argues that it was not required to base its rates on wholesale market conditions under either the Initial or the Updated Terms and Conditions. (ECF No. 37, at 12–13). Second, Defendant Sperian Energy argues that even if it had an obligation to base its rates on wholesale market conditions, Plaintiffs' allegations that Defendant Sperian Energy's rates were higher than the rates of the local utility providers, and that Defendant Sperian Energy's rates did not track the wholesale rates in PJM, are insufficient to show a breach of contract. *Id.* at 14, 16. Lastly, Defendant Sperian Energy contends that Plaintiffs' breach of contract claim is barred by the voluntary payment doctrine and by the pre-suit notice requirement of the UCC. *Id.* at 19.

*1. Enforceability of the Updated Terms and Conditions*

The first issue to address is which contract terms control: the Initial or the Updated Terms and Conditions. To sufficiently plead the existence of a contract, the plaintiff must allege facts showing that (1) "both parties manifested an intention to be bound by the agreement," (2) "the terms of the agreement are sufficiently definite," and (3) there was consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Consideration, of course, is a bargained-for exchange between the parties, *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 237 (Pa. Commw. Ct. 2017), and it is often formed by mutual promises, *see Bethlehem Area Sch. Dist. v. Zhou*, 2012 U.S. Dist. LEXIS 37313, at *6 (E.D. Pa. Mar. 19, 2012) ("It is a general principle of contract law that mutual promises are valid consideration."). Under Pennsylvania

common law, once a contract is formed, additional consideration is required to modify the contract. *Greishaw v. Base Mfg.*, 2008 U.S. Dist. LEXIS 13066, at *12 (W.D. Pa. Feb. 21, 2008). On the other hand, if the UCC, rather than common law, applies to a contract, then an agreement modifying the contract does not need consideration in order to be binding. 13 P.S. § 2209(a). Here, Plaintiffs allege that the Updated Terms and Conditions are unenforceable due to lack of consideration. (ECF No. 31, at ¶ 13). Defendant Sperian Energy argues that, under the UCC, consideration is not necessary for contract modifications. (ECF No. 49, at 6). However, both sides seem to misunderstand the nature of their contractual relationship.

Starting with the Initial Terms and Conditions, which the parties agree governed their relationship at the outset, the parties agreed to be bound for a term of three months. (ECF No. 31-1, at 2; ECF No. 31-2, at 2). During that three-month term, Plaintiffs agreed to pay a monthly fixed rate and Defendant Sperian Energy agreed to supply Plaintiffs' electricity needs. (ECF No. 31-1, at 2; ECF No. 31-2, at 2). The Initial Terms and Conditions also included Defendant Sperian Energy's notification to Plaintiffs that the agreement would be modified following the completion of the three-month term, such that Defendant Sperian Energy would continue to supply Plaintiffs electricity, but that Plaintiffs would pay a variable rate that could change from month to month. (ECF No. 31-1, at 3; ECF No. 31-2, at 3). Additionally, Plaintiffs would be able to terminate their relationships with Defendant Sperian Energy at any time after the three-month term without penalty. (ECF No. 31-1, at 4; ECF No. 31-2, at 4). The Initial Terms and Conditions also provided that if Plaintiffs did not notify Defendant Sperian Energy of their intent to cancel Defendant Sperian Energy as their supplier following the three-month term—in other words, if Plaintiffs did not notify Defendant Sperian Energy that they rejected the modification— Defendant Sperian Energy essentially would take Plaintiffs' silence as acceptance of the offer. (ECF No. 31-1, at 3; ECF No. 31-2, at 3).

The Initial Terms and Conditions further stated that if Defendant Sperian Energy decided to modify the terms or conditions that would apply to the month-to-month contractual relationship, Defendant Sperian Energy would give Plaintiffs at least thirty days' notice prior to the effective date of said modification. (ECF No. 31-1, at 3; ECF No. 31-2, at 3). By providing Plaintiffs thirty days' notice of a proposed modification, Defendant Sperian Energy would be giving Plaintiffs the opportunity either to reject the modification by contacting and canceling Defendant Sperian Energy as their supplier, or to accept the modification by remaining silent, as was the parties' agreed-upon method of acceptance. (ECF No. 31-1, at 3; ECF No. 31-2, at 3). In sum, Defendant Sperian Energy's notice to Plaintiffs of impending modifications, plus the Plaintiffs' opportunity to accept or reject the modifications constitutes a bargained-for exchange—that is, consideration.

More than thirty days prior to the end of the three-month term, and thus prior the beginning of the first month-to-month billing period, Defendant Sperian Energy did just that: it notified Plaintiffs that it had updated its Terms and Conditions, effective upon the end of the initial three-month term. (ECF No. 31, at ¶¶ 56–57). Such change constituted a modification that Plaintiffs accepted by remaining silent and not canceling Defendant Sperian Energy as their electricity supplier. Thus, not only was there a manifestation of intent to be bound,[2] but there was also consideration to support the modification: the parties made mutual promises to perform. Defendant Sperian Energy promised to supply electricity to Plaintiffs beyond the initial three-month term, and, in exchange, Plaintiffs promised to pay Defendant Sperian Energy. Because

---

[2] Additionally, Plaintiffs' acceptance of the modification is evidenced by the fact that Plaintiffs paid the bills they received from Defendant Sperian Energy.

consideration exists to support the modification, Defendant Sperian Energy's argument that the

UCC applies is irrelevant as to this point, and need not be discussed here.

Therefore, to the extent that the terms of the agreement are sufficiently definite, the

Updated Terms and Conditions are the controlling contracts.[3]  Accordingly, the contractual

language relevant to Plaintiffs' breach of contract claim is,

> If you select a variable product, the price will be calculated monthly and *may*
> *change each month in response to market fluctuations and conditions at the*
> *discretion of Sperian Energy.*  Sperian Energy's price may be higher or lower than
> the EDC's rate in any given month.  The price includes the price for electric
> generation, transmission, and related services and includes reimbursement for the
> state gross receipts tax.  It does not include distribution charges, state and local
> sales taxes, if applicable, or non-recurring charges such as (for illustration
> purposes only) collection fees.

(ECF No. 36-2, at 3; ECF No. 36-3, at 3) (emphasis added).

*2. Breach*

Having determined that the Updated Terms and Conditions are the contracts that govern

the parties' relationships in this case, the Court now turns to the issue of whether Defendant

Sperian Energy breached those contracts.  As stated above, a plaintiff sufficiently pleads a breach

of contract claim by alleging facts that show "(1) the existence of a contract, including its

essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."

*Haywood*, 976 F. Supp. 2d at 625.  As to the second element, in order to satisfy Rule 8(a), and

thus pass muster under Rule 12(b)(6), "a complaint must identify the portions of the contract that

---

[3] Although Plaintiffs attached only the welcome letter and Initial Terms and Conditions to the
Amended Complaint, Plaintiffs relied upon the Updated Terms and Conditions throughout the
Amended Complaint.  (ECF No. 31, at ¶¶ 48, 50, 56–58).  Defendant Sperian Energy provided
the Updated Terms and Conditions as exhibits attached to its Motion to Dismiss.  (ECF Nos. 36-
2, 36-3).  Because the Updated Terms and Conditions are "integral to or explicitly relied upon"
by the Amended Complaint, *see Tanksley*, 902 F.3d at 172, the Court may properly consider the
Updated Terms and Conditions without converting the Motion to Dismiss to a Motion for
Summary Judgment as to Count I.

were allegedly breached." *Churchill Downs, Inc. v. NLR Entm't, LLC*, 2015 U.S. Dist. LEXIS 135334, at *9 (D.N.J. Oct. 5, 2015); *see also Hua v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 193010, at *15 (E.D. Pa. Nov. 21, 2017) (stating that "a claim for breach of contract must plead the breach of a specific duty imposed by a contract").

Here, Plaintiffs' breach of contract claim is based, in large part, on specific language in the Initial Terms and Conditions that is not present in the Updated Terms and Conditions. (*Compare* ECF No. 31-1, at 4, *with* ECF No. 36-2, at 3). Plaintiffs' claim does not plead the breach of any specific duty imposed by the governing contract, the Updated Terms and Conditions. Therefore, the breach of contract claim in Count I of the Amended Complaint must be dismissed.

Moreover, even if Plaintiffs' allegations in Count I did address the relevant language of the Updated Terms and Conditions, the claim still fails. As noted above, Plaintiffs allege that Defendant Sperian Energy breached each of the contracts "by charging exorbitant energy rates that are not based on 'wholesale market conditions' because when wholesale market rates go down Sperian's rates go up or stay the same." (ECF No. 31, at ¶ 101). Plaintiffs appear to base their allegation of breach on two things: first, that Defendant Sperian Energy breached its contract by charging "exorbitant rates," and second, that Defendant Sperian Energy breached by charging rates that did not correlate with wholesale market rates.

*a. Exorbitant energy rates*

Plaintiffs allege that by charging Plaintiffs "rates that are substantially higher than those of competitors," Defendant Sperian Energy breached its contracts. (ECF No. 31, at ¶ 78). In *Orange v. Starion Energy PA, Inc.*, the Third Circuit Court of Appeals addressed a similar breach of contract claim, in which the plaintiff alleged that the defendant "'charg[ed] customers an arbitrary, exorbitant, monthly rate.'" *Orange v. Starion Energy PA, Inc.*, 711 Fed. App'x. 681,

683 (3d Cir. 2017) (quoting complaint). The court affirmed dismissal of the claim, stating, "That the price far exceeded the local public utility rate for a discrete amount of time is not sufficient to show that [the EGS] breached its duty to calculate the price in accordance with the contract." *Id.* at 683. The court found that the existence of other factors stated in the contract, such as market conditions in multiple territories, prevented local public utility rates from being an acceptable comparator by which the EGS's rates could be judged. *Id.* at 683–84.

In *Sevugan v. Direct Energy Servs., LLC*, the plaintiff alleged that the defendant was in breach of its contract because "the rates charged 'were not commensurate with rates otherwise available in the market or with changes in wholesale rates' and were higher than rates charged by [a local utility]." *Sevugan v. Direct Energy Servs., LLC*, 2018 U.S. Dist. LEXIS 82911, at *21 (N.D. Ill. May, 17, 2018). The court held that because "[t]he contract allowed [the defendant] to base its rate on more than one factor, including a discretionary component completely unrelated to any market rates or wholesale prices," the plaintiff failed to state a claim for breach of contract. *Id.* at *22–23.

Similarly, in *Brown v. Agway Energy Servs., LLC*, the plaintiff alleged that because the defendant "charged variable rates between 20% and 46% higher than the local utility's rate," the defendant was in breach of the contract. *Brown v. Agway Energy Servs., LLC*, 328 F. Supp. 3d 464, 472 (W.D. Pa. 2018). Relying on *Orange* and *Sevugan*, the *Brown* court found that "Plaintiff's factual allegation regarding the discrepancy between the local utility rate and [the defendant]'s utility rate as pled in the Complaint, in light of [the defendant]'s discretion to set rates, is insufficient to 'support the reasonable inference that [the defendant] did not adhere to [its rate] formula.'" *Id.* at 476.

The foregoing cases found that the inclusion of additional factors in the pricing structure, particularly a discretionary factor, precluded a breach of contract claim based on the difference

between the EGS's rates and the local utilities' rate. Additionally, although an EGS's discretion is not unlimited, it may be quite broad. *See, e.g.*, *Gorecki v. Clearview Elec., Inc.*, 338 F. Supp. 3d 470, 474 (W.D. Pa. 2018); *Brown*, 328 F. Supp. 3d at 472. Courts have dismissed breach of contract claims based on "substantially higher" energy rates where the EGS's rates far exceeded the rates of the local utilities' rates. *See Brown*, 328 F. Supp. 3d at 473 (stating that "the terms of the Customer Agreement here do not give [defendant] total discretion to set whatever electricity rate it so chooses, but the inclusion of the term 'discretion' does provide [defendant] with some leeway in setting its rate"); *see also Orange*, 711 F. App'x at 683 (affirming dismissal of breach of contract claim where defendant's rates were three times the local utility's rates); *Sevugan*, 2018 U.S. Dist. LEXIS 82911, at *7, 23–24 (dismissing breach of contract claim where defendant's rates were as much as 350% of the local utility's rates); *Hamlen v. Gateway Energy Servs. Corp.*, 2017 U.S. Dist. LEXIS 31396, at *5, 10 (S.D.N.Y. Mar. 6, 2017) (dismissing breach of contract claim where defendant's rates were as much as twice the local utility's rates).

In the instant case, the Updated Terms and Conditions provide that "the price will be calculated monthly and may change each month in response to market fluctuations and conditions at the discretion of Sperian Energy." (ECF No. 36-2, at 3; ECF No. 36-3, at 3). The contracts further state that the monthly "price includes the price for electric generation, transmission, and related services and includes reimbursement for the state gross receipts tax." (ECF No. 36-2, at 3; ECF No. 36-3, at 3). Thus, the monthly rate considers more than one factor, including a discretionary component. Plaintiff Corsale alleges he was charged rates that were between 13% and 102% more than what his local utility charged, and Plaintiff Taylor alleges he was charged between 6% and 135% more than his local utility's rates—rates that are within the range that other courts have held did not constitute a breach. (ECF No. 31, at ¶¶ 65, 67). In light of the inclusion of additional factors in the contracts, especially the discretionary factor, the fact

16

that Defendant Sperian Energy's rates were up to 135% greater than the local utility's rates is not sufficient to establish a claim for breach of contract.

*b. Correlation with wholesale market conditions*

Plaintiffs also allege that Defendant Sperian Energy breached each of its contracts by charging consumers rates that are "untethered from wholesale market prices and conditions." (ECF No. 31, at ¶ 78). The issue, then, is whether Defendant Sperian Energy had a duty to charge rates that were tethered to wholesale market rates, or, in accordance with the relevant language of the Updated Terms and Conditions, whether Defendant Sperian Energy had a duty to charge rates tethered to market rates.

First, in the Updated Terms and Conditions, the price term begins with "may." (ECF No. 36-2, at 3; ECF No. 36-3, at 3). "It is beyond dispute that 'may' is a permissive, not a mandatory, term." *Donaldson v. Informatica Corp.*, 2009 U.S. Dist. LEXIS 111142, at *25 (W.D. Pa. Nov. 30, 2009), *aff'd*, 420 Fed. App'x. 204 (3d Cir. 2011). The relevant provision states that the price "*may* change each month in response to market fluctuations and conditions at the discretion of Sperian Energy," (ECF No. 36-2, at 3; ECF No. 36-3, at 3) (emphasis added), meaning that the price could, but did not have to, change according to conditions in the market, wholesale or otherwise. Additionally, the permissive nature of this provision is undergirded by the phrase "at the discretion of Sperian Energy." Thus, the express language of the contract does not create a duty for Defendant Sperian Energy to tie its rates to "market fluctuations and conditions," much less to "wholesale market prices and conditions."

Moreover, even if Defendant Sperian Energy had a duty to tie its rates to market conditions or wholesale market conditions, the facts pleaded in the Amended Complaint are not sufficient to show that Defendant Sperian Energy failed to fulfill its duty. The purpose of deregulation of the energy industry was to allow energy suppliers to use innovative pricing

techniques, including purchasing electricity in advance. (ECF No. 31, at ¶ 25). Although EGSs and utilities experience the same or similar market fluctuations and conditions, it seems that they may respond to those changes in different manners and at different times. Thus, not only are their pricing structures likely different, but the effects of market fluctuations and conditions may be felt by EGS customers in a different billing period from utility customers. Accordingly, a side-by-side, monthly comparison of Defendant Sperian Energy's rates to the local utilities' rates is not sufficient to support the conclusion Defendant Sperian Energy did not base its rates on market fluctuations and conditions or on wholesale market conditions.

Therefore, in addition to the conclusion that Plaintiffs' breach of contract claim in Count I fails because the claim is based on the Initial Terms and Conditions, Count I also fails to the extent that the claim can be analyzed in light of the governing contractual language found in the Updated Terms and Conditions. Furthermore, in light of the express language of the price term in the Updated Terms and Conditions and the facts alleged by Plaintiffs regarding Defendant Sperian Energy's performance of its contracts, the Court concludes that any attempt by Plaintiffs to reframe the Amended Complaint to sufficiently plead a breach of contract claim would be futile. Therefore, Count I of the Amended Complaint will be dismissed, without leave to amend, because amendment of this claim would be futile.

*3. Voluntary payment doctrine and applicability of the UCC*

Because the Court finds that Plaintiffs have not alleged a breach of contract, Defendant Sperian Energy's arguments regarding the voluntary payment doctrine and the applicability of the UCC's pre-suit notice requirement are not reached.

B. Unjust enrichment claim

Next, Defendant Sperian Energy moves to dismiss Count III of the Amended Complaint, in which Plaintiffs assert a claim of unjust enrichment, arguing that the existence of a valid and enforceable contract precludes such a claim. (ECF No. 37, at 26). Unjust enrichment, an equitable, quasi-contractual doctrine, is "'inapplicable when the relationship between the parties is founded on a written agreement or express contract.'" *Cook v. General Nutrition Corp.*, 749 Fed. App'x. 126, 129 (3d Cir. 2018) (quoting *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985)). A plaintiff may plead a claim for unjust enrichment in the alternative to a breach of contract claim "only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 Fed. App'x 165, 170 n.8 (3d Cir. 2014). The parties agree that express, written contracts controlled their relationships, (ECF No. 31, at ¶ 98; ECF No. 37, at 26), and the Court finds that the existence of enforceable written contracts is beyond dispute. Therefore, Count III of the Amended Complaint is dismissed under Rule 12(b)(6).

C. Unfair Trade Practices and Consumer Protection Law claim

Lastly, Defendant Sperian Energy moves to dismiss Count II of the Amended Complaint, in which Plaintiffs bring a claim under the catch-all provision of the UTPCPL. (ECF No. 37, at 21). The Commonwealth of Pennsylvania enacted the UTPCPL in order "to even the bargaining power between consumers and sellers in commercial transactions." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. S. Ct. 2018). Accordingly, the UTPCPL is a remedial statute that "aims to protect the consumers of the Commonwealth against fraud and unfair or deceptive business practices." *Id.* As such, "it is to be construed liberally to effectuate that goal." *Id.* The catch-all provision of the UTPCPL states that "unfair methods of

competition" and "unfair or deceptive acts or practices" include "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). A plaintiff establishes a claim under the "deceptive" portion of this provision by showing (1) "a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances"; (2) the plaintiff's justifiable reliance on that deceptive act; and (3) that the plaintiff's justifiable reliance resulted in ascertainable loss. *Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012).

Regarding the first element, in addition to the statutory language requiring that the deceptive conduct produce "a likelihood of confusion or misunderstanding," courts have described "deception" and "deceptive conduct" in various ways. For example, a deceptive act is "the act of intentionally giving a false impression or a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it." *Seldon v. Home Loan Services, Inc.*, 647 F.Supp.2d 451, 470 (E.D. Pa. 2009) (internal quotations omitted). Similarly, "[a]n act or a practice is deceptive or unfair if it has the capacity or tendency to deceive." *Christopher v. First Mut. Corp.*, 2006 U.S. Dist. LEXIS 2255, at *11 (E.D. Pa. Jan. 20, 2006). Additionally, actual deception is not required; "rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. S. Ct. 2018) (internal quotations omitted). As to the second element, whether a plaintiff's reliance was justifiable "'is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.'" *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 467 (E.D. Pa. 2010) (quoting *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. Super. Ct. 2007)).

Here, Plaintiffs specifically allege in Count II that Defendant Sperian Energy violated the UTPCPL in two ways. First, Plaintiffs allege that Defendant Sperian Energy violated the UTPCL when it "failed to inform customers that its rates are substantially higher than those based on the wholesale market price and rates of electricity." (ECF No. 31, at ¶ 108). Second, Plaintiffs allege that Defendant Sperian Energy is liable under the UTPCPL for "intend[ing] that consumers would rely on Sperian's failure to disclose the monthly fees to induce them to enroll in Sperian's electricity plans." *Id.* at ¶ 109. Additionally, in their Response in Opposition to the Motion to Dismiss, Plaintiffs argue that their Amended Complaint also alleges that Defendant Sperian Energy violated the UTPCPL by engaging in a bait-and-switch tactic with the Initial and Updated Terms and Conditions. (ECF No. 46, at 20). Defendant Sperian Energy counters these allegations by arguing that each fails to sufficiently state a claim under the UTPCPL. (ECF No. 37, at 21–23; ECF No. 49, at 11). Defendant Sperian Energy also argues that Plaintiffs' UTPCPL claim is barred by the parol evidence rule, the gist of the action doctrine, and the economic loss doctrine. (ECF No. 37, at 21, 23–26).

*1. Substantially higher rates*

First, Defendant Sperian Energy argues that the facts do not support Plaintiffs' conclusion that Defendant Sperian Energy violated the UTPCPL by allegedly "fail[ing] to inform customers that its rates are substantially higher than those based on the wholesale market price and rates of electricity." (ECF No. 37, at 21–22; ECF No. 31, at ¶ 108). The Court agrees that Defendant Sperian Energy informed Plaintiffs that its rates could be higher than the local utilities' rates. Although the Initial Terms and Conditions did not govern the time periods in which Plaintiffs were under the month-to-month variable rate agreements, the Initial Terms and Conditions nonetheless forecasted for Plaintiffs that, had the Initial Terms and Conditions continued to

apply, there would be no cap on the variable rate and that there was no guarantee of savings. (ECF No. 31-1, at 4; ECF No. 31-2, at 4). That these provisions are omitted in the Updated Terms and Conditions does not mean that Defendant Sperian Energy agreed to cap the variable rate or guarantee savings in the Updated Terms and Conditions. Additionally, both the Initial and the Updated Terms and Conditions stated that "Sperian Energy's price may be higher or lower than [the local utility]'s rate in any given month," (ECF No. 31-1, at 4; ECF No. 31-2, at 4; ECF No. 36-2, at 3; ECF No. 36-3, at 3), and each monthly bill included a side-by-side comparison of Defendant Sperian Energy's rates and the local utility's rates, (ECF No. 31, at 14 n.10, 16 n.12). Plaintiffs thus were plainly informed each month of the difference between Defendant Sperian Energy's rates and their local utilities' rates.

In sum, the facts alleged in the Amended Complaint do not support Plaintiffs' allegation that Defendant Sperian Energy "failed to inform customers that its rates are substantially higher." Therefore, Plaintiffs fail to state a claim under the UTPCPL on this basis.

## 2. Monthly fees

Second, Defendant Sperian Energy challenges the allegation that it "intended that consumers would rely on Sperian's failure to disclose the monthly fees to induce them to enroll in Sperian's electricity plans." (ECF No. 37, at 22; ECF No. 31, at ¶ 109). Defendant Sperian Energy points out that the monthly fee at issue, the $4.93 Energy Service Fee, "is disclosed in the opening paragraph of both of Plaintiffs' Welcome Letters," as well as in two other paragraphs within the welcome letter and Initial Terms and Conditions. (ECF No. 37, at 22). The fact that the fee is expressly stated three times, combined with the fact that Plaintiffs had a three-day rescission period during which they could cancel either of their agreements without penalty, (ECF No. 31-1, at 4; ECF No. 31-2, at 4), makes clear that Plaintiffs were told about the fees, and

were given the opportunity to reject the agreement, before they were required to pay the fees. Consequently, Defendant Sperian Energy's charging of the monthly fee does not constitute deceptive conduct.[4]

### 3. Bait-and-switch contracts

Next, Plaintiffs argue in their Response in Opposition to the Motion to Dismiss that they also base their UTPCPL claim on allegations that Defendant Sperian Energy engaged in a bait-and-switch tactic regarding the Initial and Updated Terms and Conditions. (ECF No. 46, at 20). Specifically, Plaintiffs contend that "Defendant committed a deceptive act by sending one contract (no matter when the customer signed up with Defendant) that stated the variable rates would be based on wholesale electric prices and then deceptively updating the terms without consideration in an attempt to provide it with unfettered discretion." *Id.* Defendant Sperian Energy challenges this argument on the basis that it constitutes an improper attempt to rewrite their Complaint. (ECF No. 49, at 11).

A reading of the entire Amended Complaint suggests there are facts that might support an allegation that Defendant Sperian Energy violated the UTPCPL by engaging in a bait-and-switch tactic, but such claim is not sufficiently pleaded in Count II. While Plaintiffs refer to the alleged bait-and-switch scheme in their factual allegations, they do not tie the alleged conduct to the necessary elements for a violation of the UTPCPL in Count II. (*See* ECF No. 31, at ¶¶ 4, 12, 13, 39, 48). Accordingly, the Court will not address this issue on the merits, but will give Plaintiffs

---

[4] It is on this part of Plaintiffs' UTPCPL claim that the Court considered converting the Motion to Dismiss to a Motion for Summary Judgment. Defendant Sperian Energy provided transcripts of both phone calls in which Plaintiff Corsale and Plaintiff Taylor signed up with Defendant Sperian Energy. (ECF Nos. 36-9, 36-10). The Court ultimately concluded that it did not need to consider these transcripts in order to decide the Motion, because the transcripts did not alter the Court's analysis and conclusion that this part of the UTPCPL claim fails.

leave to amend their Amended Complaint should they decide to continue to pursue this UTPCPL claim.

*4. Parol evidence rule, gist of the action doctrine, and economic loss doctrine*

Having decided that Plaintiffs' UTPCPL claim fails on all grounds, the Court does not need to address the applicability of the parol evidence rule, the gist of the action doctrine, nor the economic loss doctrine at this time.

In conclusion, Count II of the Amended Complaint, in which Plaintiffs alleged violations of the UTPCPL, will be dismissed. Plaintiffs will be given leave to amend in accordance with this opinion.

## III. Conclusion

Based on the foregoing, Defendant's Motion to Dismiss is GRANTED.

FURTHERMORE, the Court finds that amendment as to Counts I and III would be futile. Plaintiffs are afforded leave to amend Count II, on or before **April 24, 2019**, in accordance with the foregoing opinion. Absent an amendment, the case shall be terminated. If Plaintiffs amend their complaint, Defendant Sperian Energy shall file an answer on or before **May 8, 2019**.

IT IS SO ORDERED.

DATE _April 10, 2019_          _____
                              Marilyn J. Horan
                              United States District Judge