IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN CORSALE and DAVID TAYLOR, )
*individually and on behalf of all other* )
*similarly situated*, ) Civil Action No. 18-996
)
Plaintiffs, ) Judge Marilyn J. Horan
)
v. )
)
SPERIAN ENERGY CORPORATION, )
)
Defendant. )

**OPINION AND ORDER**

Plaintiffs John Corsale and David Taylor, individually and on behalf of all others similarly situated, bring a putative class action against Defendant Sperian Energy Corporation under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 *et seq*. (ECF No. 62). The Complaint was first filed by Plaintiff Corsale on May 24, 2018 in the Eastern District of Pennsylvania. (ECF No. 1). On August 21, 2018, Plaintiff Corsale, now joined by Plaintiff Taylor, filed an Amended Complaint with leave of court. (ECF No. 31). On September 25, 2018, Defendant Sperian Energy filed a Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 36). Following briefing and oral argument, the Court granted the Motion, thereby dismissing the Amended Complaint, on April 10, 2019. (ECF No. 61). The Court, however, granted Plaintiffs leave to amend as to one part of Count II, in which Plaintiffs alleged a claim under the UTPCPL, but found that amendment as to Plaintiffs' other claims was futile. (ECF No. 61). On April 24, 2019, Plaintiffs filed a Second Amended Complaint containing the single count that is now before the Court. (ECF No. 62). Defendant Sperian Energy subsequently filed a Motion to Dismiss for failure to

1

state a claim under Fed. R. Civ. P. 12(b)(6) and a Motion to Strike the class allegations. (ECF No. 64). The parties have briefed the issues and the Motion is now ripe for decision.

For the following reasons, Defendant Sperian Energy's Motion to Dismiss will be granted, and the Motion to Strike will be moot.

**I. Background**

Plaintiffs provide a lengthy factual background, much of which is contained in this Court's previous Opinion. (ECF Nos. 61, 62). Relevant to Plaintiffs' single claim, however, are the following facts. In or around June 2015, Defendant Sperian Energy solicited Plaintiff John Corsale by mail, promising that Defendant Sperian Energy "would provide him a competitive rate if he switched" from his utility company to Defendant Sperian Energy. *Id.* at ¶ 64. Upon receiving the solicitation letter, Plaintiff Corsale called Defendant Sperian Energy to learn more, and Defendant Sperian Energy allegedly "reaffirmed its promises of a competitive rate if Plaintiff switched to its electricity plan." *Id.* Plaintiff Corsale switched from his existing utility company to Defendant Sperian Energy and thereafter received a welcome letter, dated June 30, 2015, along with a document detailing the terms and conditions of the agreement. (ECF No. 62-1; ECF No. 62, at ¶ 65). This initial document (hereinafter, "Initial Terms and Conditions") stated that the parties agreed Plaintiff Corsale was bound for a three-month term, during which time he would pay a fixed rate for electricity. (ECF No. 62-1, at 2). Additionally, the Initial Terms and Conditions explained that if Plaintiff Corsale chose to continue with Defendant Sperian Energy beyond the initial three-month term, the agreement would roll over to a month-to-month variable rate. (ECF No. 62, at ¶ 65; ECF No. 62-1, at 3). The Initial Terms and Conditions further explained the circumstances under which Defendant Sperian Energy could

modify the fixed-rate term agreement and the variable-rate agreement. (ECF No. 62-1, at 3–4). Specifically, the Initial Terms and Conditions stated

> This agreement does not renew automatically. At the end of the initial term, if you do not choose a new product, your term products will rollover into a month-to-month variable product. Sperian reserves the option to modify any term product in the event of a Material Adverse Change. A Material Adverse Change is defined as a market or regulatory event beyond Sperian's control, which would cause a material negative effect on Sperian being able to perform its obligations under this Agreement. . . . You will receive two written notices from us either as a bill message or in a separate email or direct mail that precedes either the expiration date of your Agreement or the effective date of any proposed changes in Terms. We will explain your options to you in these two advanced notifications.
>
> If you have a variable product agreement with us, Sperian Energy may amend the terms of this Agreement at any time, consistent with any applicable law, rule or regulation, by providing notice to Customer of such amendment at least thirty (30) days prior to the effective date thereof. Sperian Energy will supply Customer with a current version of this document annually and upon request.

(ECF No. 62-1, at 3–4).

As to the variable-rate price structure that would take over once the initial three-month term ended, assuming that Plaintiff Corsale did not cancel his services with Defendant Sperian Energy, the Initial Terms and Conditions provided, in part,

> The price for our Month to Month variable product will be calculated monthly and *may change each month in response to market fluctuations based on several conditions including the wholesale electricity prices* . . . . Sperian Energy's price may be higher or lower than the [Electric Distribution Company's] rate in any given month.

*Id.* at 4 (emphasis added). Additionally, the Initial Terms and Conditions provided that "No savings are guaranteed." *Id.*

Subsequently, in a letter dated August 18, 2015, Defendant Sperian Energy notified Plaintiff Corsale that the end of his initial three-month term was approaching, on or about October 3, 2015. (ECF No. 62-4, at 2; ECF No. 62, at ¶ 66). The letter also served as notification to Plaintiff Corsale that Defendant Sperian Energy had updated its terms and

3

conditions. *Id.* Plaintiffs allege that the Updated Terms and Conditions gave Defendant Sperian Energy greater discretion in setting its variable rates than the Initial Terms and Conditions, in that the Updated Terms and Conditions removed "wholesale electricity prices" from the price structure and replaced it with discretionary language. (ECF No. 62, at ¶¶ 55, 59). The language at issue in the Updated Terms and Conditions stated,

> If you select a variable product, the price will be calculated monthly and *may change each month in response to market fluctuations and conditions at the discretion of Sperian Energy.* Sperian Energy's price may be higher or lower than the EDC's rate in any given month.

(ECF No. 62-4, at 3) (emphasis added).

Then, in or around November 2015, Defendant Sperian Energy solicited Plaintiff David Taylor by telephone, allegedly promising "that Sperian would provide him with a competitive rate if he switched." (ECF No. 62, at ¶ 67). Plaintiff Taylor switched to Defendant Sperian Energy for electricity. *Id.* at ¶¶ 67–68. Defendant Sperian Energy sent Plaintiff Taylor a welcome letter, dated November 5, 2015, and a document detailing the terms and conditions of the parties' agreement, which were virtually identical to Plaintiff Corsale's welcome letter and Initial Terms and Conditions. (ECF No. 62-2; ECF No. 62, at ¶¶ 69–70). And, like Plaintiff Corsale, prior to the end of Plaintiff Taylor's initial three-month term, Plaintiff Taylor received a notification letter from Defendant Sperian Energy, dated December 29, 2015, informing Plaintiff Taylor that his three-month term would end on or about February 13, 2016, and that the terms and conditions had been updated. (ECF No. 62-3, at 3). The Updated Terms and Conditions received by Plaintiff Taylor in December 2015 were identical to the Updated Terms and Conditions that were sent to Plaintiff Corsale in August 2015. (ECF No. 62, at ¶ 85; ECF No. 36-3, at 4–6).

Neither Plaintiff Corsale nor Plaintiff Taylor cancelled his contract with Defendant Sperian Energy at the conclusion of the initial three-month term, and their contracts rolled over into month-to-month variable-rate plans. (ECF No. 62, at ¶¶ 65, 69). Plaintiffs' monthly bills included a comparison of the rate charged that month by Defendant Sperian Energy and the rate charged by Plaintiffs' prior utility companies. *Id.* at ¶ 108 n.12, ¶ 110 n.14. During the time that Plaintiff Corsale was under a month-to-month variable-rate plan, Defendant Sperian Energy charged Plaintiff Corsale at a rate that ranged from 13% to 102% greater than the rate Plaintiff Corsale would have paid had he stayed with his prior utility company, Met-Ed. *Id.* at ¶ 108. Similarly, Defendant Sperian Energy charged Plaintiff Taylor at a rate that ranged from 6% to 135% greater than the rate Plaintiff Taylor would have paid his prior utility company, West Penn Power. *Id.* at ¶ 110. Plaintiff Corsale cancelled his contract with Defendant Sperian Energy in April 2018, two and a half years, or approximately thirty billing periods, after his contract rolled over to a variable-rate plan. *Id.* at ¶ 107. Plaintiff Taylor likewise canceled his contract with Defendant Sperian Energy in May 2018, two years and three months, or approximately twenty-seven billing periods, after his contract rolled over to a variable-rate plan. *Id.* at ¶ 109.

Plaintiffs now bring their present Second Amended Complaint, alleging that Defendant Sperian Energy violated the UTPCPL by engaging in a bait-and-switch tactic that ultimately "caused thousands of Pennsylvania consumers to pay considerably more for their electricity than they should otherwise have paid." *Id.* at ¶¶ 1, 153–178.

## II. Legal standard

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted).

The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

### III. Discussion

In their single-count Second Amended Complaint, Plaintiffs allege that Defendant Sperian Energy violated two provisions of the UTPCPL. First, Plaintiffs claim that Defendant Sperian Energy violated § 201-2(4)(ix), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised," by advertising that its rates were "competitive" but instead charging rates that were "dramatically higher than wholesale prices." (ECF No. 62, at ¶¶ 155, 163–64). Second, Plaintiffs allege that Defendant Sperian Energy violated § 201-2(4)(xxi), the UTPCPL's "catch-all" provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," by engaging in a bait-and-switch scheme regarding the manner in which the month-to-month variable-rate would be calculated. *Id.* at ¶¶ 155, 157. Defendant Sperian Energy moves to dismiss the Second Amended Complaint, arguing that Plaintiffs have simply tried to repackage their claims that were dismissed with prejudice by the Court. (ECF No. 65, at 6). Defendant Sperian Energy also argues that Plaintiffs' UTPCPL claim is barred by the parol evidence rule and the gist of the action doctrine. (ECF No. 65, at 21–22).

6

A. False advertising provision

First, regarding Plaintiffs' allegations that Defendant Sperian Energy violated the UTPCPL by engaging in false advertising, (ECF No. 62, at ¶¶ 60–61, 155), this is the first time that such a claim has been raised by the Plaintiffs. In this Court's prior Opinion, the Court gave Plaintiffs leave to amend as to the narrow issue of the alleged bait-and-switch scheme. Plaintiffs did not request, and the Court has not granted, leave to amend to add an additional claim. Nevertheless, even if the Court were to allow amendment of the Second Amended Complaint to include a claim under the false advertising provision of the UTPCPL, the claim would still fail.

To state a claim under § 201-2(4)(ix) of the UTPCPL, "a plaintiff must allege: (1) a defendant's representation is false; (2) it actually deceives or has a tendency to deceive; and (3) the representation is likely to make a difference in the purchasing decision." *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (quotations omitted). However, puffery—"'exaggeration or overstatement expressed in broad, vague, and commendatory language'"—is not actionable under the UTPCPL. *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 416 (E.D. Pa. 2016) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)). Relevant here, one category of non-actionable puffery "involves claims of superiority over a competitor's product." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. S. Ct. 2018). Similarly, other courts have found that "vague promises of cost savings and competitive rates" constitute mere puffery. *Landau*, 223 F. Supp. 3d at 416.

Not only are the allegations regarding the advertising threadbare—Plaintiffs allege only that Defendant Sperian Energy advertised that it offers "competitive" rates—but such a vague claim of "competitive" rates is puffery and, therefore, not actionable. Accordingly, this portion

of Plaintiffs' UTPCPL claim, even if properly added to the Second Amended Complaint, fails as a matter of law.

B. Catch-all provision

Second, as noted above, the UTPCPL's list of "unfair or deceptive acts or practices" finishes with a catch-all provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). Plaintiffs allege that Defendant Sperian Energy violated this provision when it failed to inform its customers that it never intended to base the variable-rate price structure on wholesale electricity prices, but instead "always intended to update its contract, and always did in fact update its contract, despite no material adverse events in the marketplace or other justification to remove its requirement to calculate its variable rates considering wholesale electricity prices." (ECF No. 62, at ¶ 157). Defendant Sperian Energy argues that the Second Amended Complaint should be dismissed because Defendant Sperian Energy did not act deceptively when it transitioned Plaintiffs from the Initial Terms and Conditions to the Updated Terms and Conditions, primarily because neither the Initial nor the Updated Terms and Conditions required that Defendant Sperian Energy "tie its variable rates to wholesale electricity prices." (ECF No. 65, at 15). Additionally, Defendant Sperian Energy notes that Plaintiffs misread the language of the contract and thus incorrectly rely on the "Material Adverse Change" term. *Id.* at 17. Lastly, Defendant Sperian Energy contends that Plaintiffs "cannot show that they suffered any ascertainable loss as a result" of the alleged deceptive conduct. *Id.* at 19.

*i. Meaning of "Material Adverse Change"*

As an initial matter, Plaintiffs focus their claim heavily on the "Material Adverse Change" language in the Initial Terms and Conditions. (*See, e.g.*, ECF No. 62, at ¶¶ 59, 62, 71, 82, 90, 157). Plaintiffs contend that this language precluded Defendant Sperian Energy from changing the terms of the agreement relevant to the variable-rate contract period without the existence of a Material Adverse Change. *See, e.g., id.* at ¶¶ 8, 58–59, 66, 70. Plaintiffs further contend that no Material Adverse Change occurred and that Defendant Sperian Energy engaged in deceptive conduct when it modified the contract terms through the Updated Terms and Conditions. *Id.* at ¶ 90. However, Plaintiffs misread the plain language of the contract. The relevant provision in the Initial Terms and Conditions states that "Sperian reserves the option to modify any *term* product in the event of a Material Adverse Change," but that "If you have a *variable* product agreement with us, Sperian Energy may amend the terms of this Agreement at any time . . . ." (ECF No. 62-1, at 3–4 (emphases added)). In other words, Defendant Sperian Energy agreed to limit the circumstances under which it would be able to modify the terms and conditions of a term product—like Plaintiffs' initial three-month, fixed-rate plans—to the occurrence of a Material Adverse Change. But, for variable products—like Plaintiffs' month-to-month, variable-rate plans that ensued once their respective initial three-month, fixed-rate term products ended—Defendant Sperian Energy could modify the terms and conditions at any time, so long as they gave sufficient notice such that customers could cancel their contracts. With the Updated Terms and Conditions, Defendant Sperian Energy did not modify the terms and conditions of Plaintiffs' three-month, fixed-rate term plans; it only modified the terms and conditions of the month-to-month, variable-rate plans, which it could do at any time. Thus, to the extent that Plaintiffs' claim is based upon the "Material Adverse Change" language, the claim fails.

Setting aside all references to the Material Adverse Change provision, then, the Court now turns to what remains of Plaintiffs' bait-and-switch claim, brought under the catch-all provision of the UTPCPL.

*ii. Merits of bait-and-switch claim*

Under the "deceptive" portion of the catch-all provision of the UTPCPL, a plaintiff establishes a claim by showing (1) a deceptive act; (2) the plaintiff's justifiable reliance on that deceptive act; and (3) that the plaintiff's justifiable reliance resulted in ascertainable loss. *Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012).

*a. Deceptive conduct.* Regarding the first element, the language of the catch-all provision requires that the deceptive conduct produce "a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi). Additionally, courts have described "deception" and "deceptive conduct" in various ways. For example, a deceptive act is "the act of intentionally giving a false impression or a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it." *Seldon*, 647 F.Supp.2d at 470 (internal quotations omitted). Similarly, "[a]n act or a practice is deceptive or unfair if it has the capacity or tendency to deceive," *Christopher v. First Mut. Corp.*, 2006 U.S. Dist. LEXIS 2255, at *11 (E.D. Pa. Jan. 20, 2006), or if it "is conduct that is likely to deceive a consumer acting reasonably under similar circumstances," *Montanez*, 876 F. Supp. 2d at 519.

The Third Circuit has previously dealt with the deceptive nature of bait-and-switch tactics in the context of a Truth in Lending Act case—the facts of which make the Third Circuit's reasoning relevant here. *Rossman v. Fleet Bank Nat'l Ass'n*, 280 F.3d 384, 395–400 (3d Cir. 2002). In *Rossman*, the plaintiff received an offer to obtain a credit card with no annual fee. *Id.* at 387. The offer also contained a provision that the credit card company "reserve[d] the right to

change the benefit features associated with your Card at any time." *Id.* at 388. The plaintiff accepted the offer, and shortly thereafter, she received her credit card and a "Cardholder Agreement" that reiterated the no-annual-fee provision and the change-in-terms provision. *Id.* A few months later, the credit card company sent the plaintiff a letter informing her of its intention to change the terms of the agreement to include an annual fee, claiming that the fee was necessary because of interest rate hikes by the Federal Reserve. *Id.* The plaintiff alleged, however, that "despite [the credit card company's] protestations that it had been effectively forced to cease offering the card without an annual fee, it continued to solicit other new customers with offers for no-annual fee credit cards," only to impose a fee after customers signed up. *Id.* at 389.

The Third Circuit found that the annual fee disclosures in the offer and initial contract, required by the Truth in Lending Act, were misleading. *Id.* at 397. The court explained, "It is the bait, not the switch, that is deceptive" because "the real intention [of the bait] is simply to create a contact with the buyer that allows the seller to switch the consumer to a more profitable sale." *Id.* at 396. In other words, it is the seller's intention at the time of the offer (or initial contract) that determines whether the offer was deceptive. The court went on to explain, "In one sense, the solicitation disclosures were accurate—the agreement . . . did not contemplate an annual fee"; however, "in another sense, if [the credit card company] intended to impose an annual fee shortly thereafter, the disclosures were at least misleading." *Id.* at 397. This was so because "[a] reasonable consumer would expect that, even if the terms may change, the stated terms are those that the card issuer *intends* to provide," but that the offer and initial contract "feigned an intention to provide credit under a set of terms that [the credit card company] did not intend to provide over time." *Id.* (emphasis added).

Here, Plaintiffs allege a pattern of conduct similar to that in *Rossman*: Defendant Sperian Energy included in its initial contract with each Plaintiff Corsale and Plaintiff Taylor that once their fixed-rate terms ended and their plans rolled over to variable-rate plans, the variable rate would "be calculated monthly and may change each month in response to market fluctuations based on several conditions including the wholesale electricity prices." (ECF No. 62-1, at 4; ECF No. 62, at ¶ 157). However, before the variable-rate plans could take effect, Defendant Sperian Energy changed that language to "may change each month in response to market fluctuations and conditions at the discretion of Sperian Energy." (ECF No. 62-4, at 3; ECF No. 62, at ¶ 157). Like in *Rossman*, the change is not in itself problematic; Defendant Sperian Energy was allowed, under the plain language of the contract, to make changes at any time to the terms of a variable-rate energy plan, and had Defendant Sperian Energy changed the variable-rate provision as to all customers at a single point in time, such a change would not be suspect. Rather, Defendant Sperian Energy entered into the Initial Terms and Conditions with Plaintiff Corsale in June 2015, and then the Updated Terms and Conditions took effect in October 2015. (ECF Nos. 62-1, 62-4). One month later, in November 2015, Defendant Sperian Energy entered into the Initial Terms and Conditions (identical to the Initial Terms and Conditions received by Plaintiff Corsale) with Plaintiff Taylor, and then, effective February 2016, changed Plaintiff Taylor to the Updated Terms and Conditions. (ECF Nos. 62-2, 62-3). It appears, then, that much like the facts in *Rossman*, at the time Defendant Sperian Energy entered into the Initial Terms and Conditions with each Plaintiff, Defendant Sperian Energy had the present intention to later change the variable-rate term to a more discretionary or permissive structure.[1] It is

---

[1] Although how much more discretionary is a matter of debate. The Initial Terms and Conditions states that the variable rate "*may* change each month in response to market fluctuations based on *several* conditions including the wholesale electricity prices"—meaning

12

Defendant Sperian Energy's intention at the time of the Initial Terms and Conditions that matters; and, at this stage of the pleadings, Plaintiffs have sufficiently pleaded that the Initial Terms and Conditions constitute deceptive conduct within the meaning of the UTPCPL.

*b. Justifiable reliance and ascertainable loss.* Having found that Plaintiffs plead facts sufficient to show that Defendant Sperian Energy engaged in deceptive conduct, the next issues to consider are whether Plaintiffs justifiably relied on that deceptive conduct, and if so, whether that justifiable reliance caused an ascertainable loss. *See Montanez*, 876 F. Supp. 2d at 519. Whether a plaintiff's reliance was justifiable "'is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.'" *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 467 (E.D. Pa. 2010) (quoting *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007)). A court may nonetheless determine, "even at the motion to dismiss stage, that a plaintiff's allegations of justifiable reliance fail as a matter of law." *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 U.S. Dist. LEXIS 156443, at *22 (E.D. Pa. Sept. 25, 2017) (citing *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008)).

In order for a plaintiff's reliance to be justifiable, it must be reasonable, and it often "depends on whether the recipient knew or should have known that the information supplied was false." *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002). After all, "[i]f a man knows the truth about a representation, he is neither deceived nor defrauded, and any loss he may sustain is in

---

that "wholesale electricity prices" is but one factor that "may" be considered. The same provision in the Updated Terms and Conditions, on its face, allows Defendant Sperian Energy greater discretion by removing the expressly-named condition ("wholesale electricity prices") and adding "at the discretion of Sperian Energy." But, in light of the permissive nature of the Initial Terms and Conditions, it is not clear, in a practical sense, how much more discretion the Updated Terms and Conditions actually provided Defendant Sperian Energy.

13

effect self-inflicted." *Emery v. Third Nat'l Bank of Pittsburgh*, 162 A. 281, 284 (Pa. 1932). Lastly, the UTPCPL requires that a plaintiff show that he has suffered, a result of his justifiable reliance, an "ascertainable loss of money or property, real or personal." 73 P.S. § 201-9.2(a).

Here, Plaintiffs allege that they "justifiably relied on Defendant's wrongful actions to their detriment" when they "entered into agreements to purchase electricity from Sperian." (ECF No. 62, at ¶¶ 174–75). They further allege that they suffered an ascertainable loss in the form of "monies based on the difference in the rates they were charged versus the rates they would have been charged had Sperian charged rates based on the wholesale market price and rate of electricity or had they not switched to Sperian from their previous utility providers." (ECF No. 62, at ¶ 176). Plaintiffs have sufficiently pleaded that they justifiably relied on the Initial Terms and Conditions as of the time they received the Initial Terms and Conditions. The Initial Terms and Conditions, however, permitted Defendant Sperian Energy to, upon notice, modify the terms of any variable-rate plan at any time. And, the Initial, as well as the Updated, Terms and Conditions allowed Plaintiffs to cancel the variable-rate plan at any time. Defendant Sperian Energy gave Plaintiffs notice that the terms would change relative to the variable-rate plan, effective at the end of the initial three-month term. Specifically, the Updated Terms and Conditions informed Plaintiffs that Defendant Sperian Energy intended to have greater discretion in setting the variable rate. Plaintiffs had ample opportunity to reject the Updated Terms and Conditions prior to the effective date but did not do so. In other words, when Defendant Sperian Energy sent Plaintiffs the Updated Terms and Conditions, it essentially showed its hand and gave Plaintiffs plenty of time to get out of what Plaintiffs now consider to be a bad deal.

Therefore, Plaintiffs were not only aware that the terms of their contracts with Defendant Sperian Energy were subject to change, and that the terms were going to change, but they also

accepted this change. Plaintiffs' acceptance of this change made the Updated Terms and Conditions the controlling contract and caused the Initial Terms and Conditions to be defunct. Any reliance that Plaintiffs continued to have on the Initial Terms and Conditions beyond the end of the initial three-month term was unreasonable as a matter of law because Plaintiffs knew that the Initial Terms and Conditions were outdated and obsolete. Consequently, for Plaintiffs to have a viable UTPCPL claim, any ascertainable loss they suffered must have come about as a result of their justifiable reliance during that initial three-month, fixed-rate term. However, the monetary loss alleged by Plaintiffs is related only to the time during which they were under the variable-rate plan, after the initial three-month term ended. Any loss Plaintiffs suffered under the variable-rate plan, then, did not come about as a result of their justifiable reliance. Thus, Plaintiffs were "neither deceived nor defrauded" in violation of the UTPCPL under their variable-rate plans, "and any loss [they] may [have] sustain[ed] is in effect self-inflicted."[2] *Emery*, 162 A. at 284.

In conclusion, although Plaintiffs plead facts showing that Defendant Sperian Energy engaged in deceptive conduct, and that they justifiably relied on that deceptive conduct, at least for a short period of time, Plaintiffs fail to plead facts showing that their justifiable reliance resulted in an ascertainable loss. Accordingly, Plaintiffs' UTPCPL claim must be dismissed for failure to state a claim.

---

[2] Moreover, Plaintiffs' monthly bills included a side-by-side comparison of the rate charged by Defendant Sperian Energy and the rate they would have paid had they remained with their prior utility companies. The reasonableness of any belief that Plaintiffs continued to have that the rates charged by Defendant Sperian Energy would be based on the wholesale market rate—which Plaintiffs interpret to mean that Defendant Sperian Energy's rates would be the same or lower than Plaintiffs' prior utility companies' rates—is belied by the fact that Plaintiffs continued on as customers of Defendant Sperian Energy for over two years, despite receiving a side-by-side comparison each month showing that Defendant Sperian Energy's rates were, in Plaintiffs' words, "substantially higher."

C. Parol evidence rule, gist of the action doctrine, and economic loss doctrine

Having decided that Plaintiffs' UTPCPL claim fails, the Court does not need to address the applicability of the parol evidence rule nor the gist of the action doctrine at this time.

## IV. Conclusion

Based on the foregoing, Defendant Sperian Energy's Motion to Dismiss is GRANTED, and the Second Amended Complaint is hereby DISMISSED. Additionally, having found that Plaintiffs' Second Amended Complaint fails to state a claim for which relief may be granted, Defendant Sperian Energy's Motion to Strike the class allegations is MOOT.

IT IS SO ORDERED.

DATE October 3, 2019

Marilyn J. Horan
United States District Judge